532 P.2d 558

**REX FINANCIAL CORPORATION, a corporation, Appellant,**

v.

**GREAT WESTERN BANK & TRUST, a state banking corporation, Appellee.**

**No. I CA–CIV 2265.**

Court of Appeals of Arizona, Division 1, Department A. March 11, 1975.

Engdahl, Jerman, Butler & Estep by Dean Estep, Phoenix, for appellant.

Brown, Vlassis & Bain, P.A. by Richard Calvin Cooledge, Phoenix, for appellee.

## OPINION

DONOFRIO, Judge.

This is an appeal from a judgment in favor of the appellee, Great Western Bank & Trust, on a motion to dismiss which was treated by the trial court as a motion for summary judgment under Rule 56 of the Arizona Rules of Civil Procedure, 16 A.R. S. The trial court considered all of the pleadings, affidavits, other matters of record, and the oral arguments of counsel and determined that there was no genuine issue of material fact, in reaching its judgment. For the reasons given below we affirm the judgment of the trial court.

The relevant facts are undisputed. In December of 1971 appellant entered into an agreement with Liberty Mobile Home Centers, Inc., a dealer in mobile homes, under which appellant agreed to finance this dealer's inventory of mobile homes. The dealer delivered to appellant certain manufacturer's certificates of origin on mobile homes to secure repayment of the loans, and gave appellant a security interest in the vehicles by way of a security agreement between the parties. This appeal concerns four of those mobile homes. The four mobile homes were sold by the dealer in the regular course of his business to certain individuals on security agreement contracts. These four security agreement contracts were then sold and assigned to

the appellee, Great Western, in the ordinary course of its business for a certain sum which was paid to the dealer. Unfortunately, the dealer did not use these funds to pay off its outstanding loans owed to the appellant.

■ The basis for attacking a Rule 56 summary judgment ruling is that there were material factual issues disputed by the parties. All facts considered by the trial court appear in the pleadings, affidavits, depositions, and of course, oral arguments of the parties. On reviewing the record we are compelled to agree with the trial court that there were no material issues of fact, and that this was a question of law concerning the construction and application of A.R.S § 44–3129 (U.C.C. 9–308) concerning the priority between certain secured creditors and purchasers of chattel paper.

A.R.S. § 44–3129 states:

"A purchaser of chattel paper or a non-negotiable instrument who gives new value and takes possession of it in the ordinary course of his business and without knowledge that the specific paper or instrument is subject to a security interest has priority over a security interest which is perfected under § 44–3125 (permissive filing and temporary perfection). *A purchaser of chattel paper who gives new value and takes possession of it in the ordinary course of his business has priority over a security interest in chattel paper which is claimed merely as proceeds of inventory subject to a security interest (§ 44–3127), even though he knows that the specific paper is subject to the security interest* Added Laws 1967, Ch. 3, § 5." (Emphasis added)

Since it was established that Great Western Bank had knowledge of the security interest claimed by Rex Financial Corporation in the four mobile homes, the second sentence of the foregoing section is the critical one for our purposes.

■ Appellant's first argument concerns the definition of "chattel paper" used in the above-mentioned sentence of A.R.S. §

44–3129. Appellant argues that the manufacturer's certificates of origin, which remained in its possession, were a part of the chattel paper and were necessary ingredients along with the security agreements purchased by Great Western to make up the "chattel paper" which must be possessed by the purchaser. We do not agree. A.R.S. § 44–3105(A)(2) defines "chattel paper" as:

"'Chattel paper' means a writing or writings which evidence both a monetary obligation and a security interest in or a lease of specific goods. When a transaction is evidenced both by such a security agreement or a lease and by an instrument or a series of instruments, the group of writings taken together constitutes chattel paper."

Appellant asserts that A.R.S. § 42–643 and § 28–325 of the Motor Vehicle Code contemplate that a manufacturer's certificate of origin is a part of the "transaction" where chattel paper is purchased as in A.R.S. § 44–3105(A)(2) above. We do not think , that such comparison is relevant here. "Chattel paper" clearly must evidence "both a monetary obligation and a security interest in or a lease of specific goods." The manufacturer's certificates of origin do not meet this definition, and the trial court's construction of A.R.S. § 44–3105(A)(2) was correct in the application to this factual situation. It was undisputed that Great Western gave "new value" for the four security agreements it purchased from the dealer, all in accordance with § 44–3129. ,

■ The next requirement of § 44–3129 which is attacked by appellant is the requirement that the purchase of the chattel paper be "in the ordinary course of *his* business." (emphasis added) Appellant maintains that this refers to a practice which "should have been followed" and not to the practice of this particular purchaser of chattel paper. Again we do not agree. The plain language of the statute refers to *"his business"* (meaning the purchaser of the chattel paper). It is undisputed that

this purchase was the normal means used at Great Western to obtain this type of chattel paper. As was stated in the deposition of Mr. McFadden, a representative of Great Western, he expected the *dealer* to disburse funds to appellant to pay off the loans for the "floor plan" financing that the dealer had obtained from appellant. The term "buyer in the ordinary course of business" with its requirements of good faith, as used elsewhere in the Uniform Commercial Code, is to be distinguished from the use here of "[buyer] in the ordinary course of *his* business." In fact, § 44–3129 (second sentence) allows the purchaser of the chattel paper to have priority even if he has knowledge of a prior security interest in the collateral. As noted by White and Summers in their Treatise on the Uniform Commercial Code, " . . . the later party is favored on the assumption that chattel paper is his main course but merely the frosting on the cake for the mere proceeds claimant." White and Summers, Uniform Commercial Code, Sec. 25–17, p. 951 (1972 Edition).

■ This brings us to the final issue raised by appellant: the fourth requirement of the second sentence of § 44–3129, that the security interest claimed by appellant is claimed "merely as proceeds of inventory subject to a security interest." We find Comment 2 to this section of the U.C.C. (as found in the Final Report of the Permanent Editorial Board for the Uniform Commercial Code, Review Committee for Article 9, April 25, 1971) instructive on this issue. There it is stated:

> "Clause (b) of the section deals with the case where the security interest in the chattel paper is claimed merely as proceeds—i.e., on behalf of an inventory financer who has not by some new transaction with the debtor acquired a specific interest in the chattel paper. In that case a purchaser, even though he knows of the inventory financer's proceeds interest, takes priority provided he gives new value and takes possession of the paper in the ordinary course of his business."

We take this language to mean that the drafters of the Code contemplated a situation such as the instant one where the inventory financer, Rex Financial Corp., had a security interest in the collateral (mobile homes) and the proceeds upon sale. The record before us does *not* indicate that Rex entered into any new transaction with the debtor/dealer. The trial court had before it the security agreement between Rex and the dealer as well as the affidavit of Rex's president, and found that Rex's claim was merely to the proceeds of the inventory when sold. We do not find error in this construction and application of the term "mere proceeds of inventory" by the trial court. We think it is a reasonable interpretation of the record that the appellant, Rex, did *not* place a substantial reliance on the chattel paper in making the loan, but rather relied on the collateral (mobile homes) and the proceeds when the collateral was sold. The proceeds of the sale of these four mobile homes included the chattel paper sold by the dealer to Great Western. Rex could have protected itself by requiring all security agreements executed on sale of the mobile homes to be turned over immediately to Rex, or if sold, that all payments for the security agreements (chattel paper) be made to itself.

A case that aptly illustrates the operation of U.C.C. 9–308 (A.R.S. § 44–3129) is Associates Discount Corporation v. Old Freeport Bank, 421 Pa. 609, 220 A.2d 621 (1966). In that case a finance company which purchased chattel paper from an auto dealer (in a factual situation somewhat similar to ours) prevailed over a bank which had "floor planned" the inventory of the dealer. The court found that the bank's claim was a mere proceeds claim to the chattel paper and that U.C.C. § 9–308 (second sentence) would operate to give priority to the purchaser of the chattel paper. The inventory financer's interest in the "proceeds" of the sale of the inventory had been shifted to the money paid by the purchaser of the chattel paper to the dealer. Another case in which the same result was obtained was Chrysler

Credit Corporation v. Sharp, 56 Misc.2d 261, 288 N.Y.S.2d 525 (1968), a New York case, which again applied U.C.C. § 9–308 and held that the purchaser of an installment contract from an automobile dealer would prevail over a secured inventory financer.

The case of Price v. Universal C.I.T. Credit Corporation, 102 Ariz. 227, 427 P.2d 919 (1967), although decided before our state's adoption of the Uniform Commercial Code, is still instructive in the instant case. The court there held that an inventory financer who brought an action against, among others, the purchase money lender on the sale of an automobile should not have priority over the purchase money lender. The inventory financer sought to recover money loaned to the dealer on a "flooring loan" when the automobiles were sold out of trust. We realize that the Price case did not involve application of U.C.C. § 9–308 (A.R.S. § 44–3129), but it is indicative of the general feelings of our courts in the area of priorities between secured creditors and purchasers of chattel paper as proceeds of the sale of inventory collateral.

In any case, the construction and application of A.R.S. § 44–3129 (U.C.C. § 9–308) to undisputed facts is a question of law for the trial court which was reasonably determined in the instant case.

Affirmed.

OGG, P. J., Department A, and STEVENS, J., concur.