**BORG–WARNER ACCEPTANCE CORPORATION, Appellant,**

v.

**C.I.T. CORPORATION, Appellee.**

No. 07–83–0019–CV.

Court of Appeals of Texas, Amarillo.

Sept. 21, 1984.

Rehearing Denied Oct. 19, 1984.

Robert M. Warner, Dallas, for appellant.

Don C. Dennis, Lubbock, for appellee.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

REYNOLDS, Chief Justice.

Borg-Warner Acceptance Corporation, the inventory financer, appeals from a summary judgment decreeing that C.I.T. Corporation, the retail financer, has a superior security interest in two International Harvester tractors originally acquired for sale by Lubbock Implement Company, Inc., the dealer. The judgment was rendered upon the motion of C.I.T., who instituted this cause of action for a declaratory judgment after Lubbock Implement filed for bankruptcy reorganization and the tractors were thereafter repossessed by Borg-Warner and sold with the consent of all parties to the cause. Concluding that the fact issues which exist are immaterial to the properly rendered summary judgment, we affirm.

Borg-Warner entered into a security agreement with, and financed the two International Harvester Model 3588 tractors for, Lubbock Implement and timely perfected its security interest therein by the filing of a UCC–1 financing statement. Thereafter, on 6 April 1981 Lubbock Implement entered into a "Texas Security Agreement (Conditional Sales Contract)" to sell the tractors to Deld Farms, Inc., for a cash price of $89,000 and a time price of $117,371.70 which included a $9,000 down payment. At that time, Don E. Davis was president of both Lubbock Implement and Deld Farms, and his son, Eddie Don Davis, was secretary of Deld Farms and also worked as a salesman for Lubbock Implement. On 7 April 1981 the security agreement-sales contract was assigned by Lubbock Implement to C.I.T., and C.I.T. perfected its security interest in the chattel paper by timely filing a UCC–1 financing statement. Lubbock Implement credited Deld Farms' open account for the $80,000 purchase price advanced by C.I.T., but did not debit the account for the same amount. The testimony is unclear as to whether the $9,000 down payment was ever made by Deld Farms, and the warranty cards to the tractors were not issued.

The two tractors were removed from Lubbock Implement's lot by Eddie Don Davis some time after the execution of the security agreement-conditional sales contract, and "hauled" to a farm operated by Deld Farms in Lamesa, Texas. The testimony is conflicting as to how much the tractors were used by Deld Farms in its farming operations, or whether they were used at all. After a day or several days, the tractors were returned to Lubbock Implement's lot where they remained until Lubbock Implement filed for bankruptcy reorganization and they were repossessed by Borg-Warner. During the time the tractors were on Lubbock Implement's lot, but after the conditional sales contract-security agreement had been executed by Deld Farms, Don Davis represented to Borg-Warner that the tractors were in inventory by signing the inventory floor-check list which included the tractors as inventory. Lubbock Implement never informed Borg-Warner that the tractors had been sold, and Lubbock Implement's business records reflected that the tractors remained in inventory.

 Borg-Warner appeals from the judgment adverse to it.[1] By five points of

1. The trial court also granted summary judgment for joint and several liability against the

error, Borg-Warner contends that it raised a genuine issue of material fact as to C.I. T.'s theories of recovery under the Texas Uniform Commercial Code.[2] At the outset we note that C.I.T. is entitled to summary judgment only if it can show that on at least one of its theories every element essential to its recovery is so clearly established that there is no material issue of fact as to the truth of its contentions. *Matthews v. Houtchens*, 576 S.W.2d 880, 884 (Tex.Civ.App.—Fort Worth 1979, no writ); 4 R. McDonald, Texas Civil Practice in District and County Courts § 17.26.2 (rev. 1971). The evidence must be viewed in a light most favorable to the non-movant, conflicts in the evidence are ignored, and the evidence which tends to support the position of the non-movant is accepted as true. *Great American R. Ins. Co. v. San Antonio Pl. Sup. Co.*, 391 S.W.2d 41, 47 (Tex.1965).

■ Borg-Warner and C.I.T. joined the issues in the trial court which are raised on appeal, one of which is C.I.T.'s contention that it is entitled to priority to the proceeds from the consented-to sale of the tractors under section 9.308(2), and Borg-Warner's fifth-point-of-error argument that section 9.308 applies only to priorities of security interests in chattel paper and hence does not control here in determining the priorities of security interests in the tractors.[3] Section 9.308(2) provides that:

A purchaser of chattel paper or an instrument who gives new value and takes possession of it in the ordinary course of his business has priority over a security interest in the chattel paper or instrument

\* \* \* \* \* \*

(2) which is claimed merely as proceeds of inventory subject to a security interest (Section 9.306) even though he knows that the specific paper or instrument is subject to the security interest.

As Borg-Warner points out, section 9.308, when considered by itself, applies to priorities in chattel paper or other instruments, and not to priorities in the collateral itself. However, section 9.308 refers to section 9.306 which provides in pertinent part:

(e) If a sale of goods results in an account or chattel paper which is transferred by the seller to a secured party, and if the goods are returned to or repossessed by the seller or the secured party, the following rules determine priorities:

(1) If the goods were collateral at the time of sale for an indebtedness of the seller which is still unpaid, the original security interest attaches again to the goods and continues as a perfected security interest if it was perfected at the time when the goods were sold. . . .

(2) An unpaid transferee of chattel paper has a security interest in the goods . . . . prior to a security interest asserted under Subdivision (1) to the extent that the transferee of the chattel paper was entitled to priority under Section 9.308.

Therefore, since the goods were returned to Lubbock Implement, if C.I.T. has a security interest in the chattel paper under section 9.308 which is prior to Borg-Warner's interest, then C.I.T.'s interest in the goods takes priority over Borg-Warner's section 9.306(e)(1) security interest by operation of section 9.306(e)(2). *Crocker Nat.*

---

trial court defendants Don E. Davis, Eddie Don Davis, and Deld Farms, Inc. for $108,371.70 and attorney's fees as provided in the security agreement-sales contract, to be offset by the amounts paid to C.I.T. by Borg-Warner. The Davises and Deld Farms did not respond to C.I.T.'s motion for summary judgment, nor do they appeal from the judgment.

2. All references to sections are to the sections of the Tex.Bus. & Com.Code Ann. (Vernon Supp. 1984) unless otherwise noted.

3. Borg-Warner also originally contended by its fifth point that it was entitled to a reversal and rendition because its security interest is superior to any security interest C.I.T. might have. However, upon submission of this cause, Borg-Warner candidly conceded that without an opposing motion for summary judgment, it is not entitled to a rendition. *Cowan v. Woodrum*, 472 S.W.2d 749, 750 (Tex.1971). Therefore, for the record, this contention is overruled.

*Bank v. Clark Equipment Credit Corp.,* 724 F.2d 696, 699–701 (8th Cir.1984).

C.I.T. conclusively established the first three elements of its cause of action, under section 9.308(2), *i.e.,* it purchased and took possession of the chattel paper in the ordinary course of its business and gave Lubbock Implement new value. Only the fourth element, *i.e.,* whether the chattel paper constitutes proceeds of inventory, remains at issue.

Borg-Warner argues that since there was "no actual sale" the "alleged chattel paper" cannot be proceeds. However, section 9.306(a) defines proceeds to include "whatever is received upon the sale, exchange, collection *or other disposition* of collateral or proceeds." (Emphasis added.) The term "other disposition" is not defined by the Code, but it has been characterized as something other than a sale or exchange, with the minimum requirement that the transaction meet the threshold test of effecting a transfer of the property. *Weisbart & Co. v. First Nat. Bank of Dalhart, Tex.,* 568 F.2d 391, 395 (5th Cir.1978). When Deld Farms took possession of the tractors after the execution of the conditional sales contract-security agreement, this transaction was, when viewed in the light most favorable to Borg-Warner, at the least a disposition within the meaning of section 9.306.

■ It follows that the conditional sales contract-security agreement assigned to C.I.T. was proceeds of inventory within the meaning of sections 9.308(2) and 9.306(a). Therefore, C.I.T. has conclusively established that there is no material issue of fact as to every element of its theory of recovery under sections 9.308(2) and 9.306(e)(2).

Still, Borg-Warner contends in its first and related point that, if the transaction between Deld Farms and Lubbock was a "sham" presumably because Deld Farms did not make the down payment nor was its account debited for the purchase price, Lubbock Implement could not be said to have given value to Deld Farms, and Deld Farms would have no rights in the collateral, and thus whatever security interest

C.I.T. might have, it did not meet the requirements of section 9.203 for attachment and enforceability. The requirements of section 9.203 are: (1) that the debtor signed the security agreement, (2) value was given, and (3) the debtor has rights in the collateral. There is no question that Deld Farms signed the security agreement, therefore, the requirements at issue are (2) and (3).

■ The evidence conclusively establishes that Eddie Don Davis removed the tractors from Lubbock Implement's lot after the security agreement-sales contract was executed, took them to a farm operated by Deld Farms, and later returned them to the same lot, where Deld Farms sometimes stores its equipment. The interest of Deld Farms in the two tractors, however "slight or tenuous or marginal,"—*i.e.,* notwithstanding that the warranty cards were not issued, that the tractors were reflected as inventory in Lubbock Implement's business records, and that it is questionable whether a down payment was made—evidenced by the possession of the tractors by Deld Farms together with the duly executed security agreement-conditional sales contract, conclusively established an interest sufficient to permit the attachment and enforceability of the security interest of Lubbock Implement under § 9.203, *Fisher v. First Nat. Bank of Memphis, Tex.,* 584 S.W.2d 515, 518 (Tex.Civ.App.—Amarillo 1979); *Matter of Samuels & Co., Inc.,* 526 F.2d 1238, 1247 (5th Cir.), *cert. denied,* 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976), which was assigned to C.I.T. *See Corpus Christi Bank and Trust v. Smith,* 525 S.W.2d 501, 506 (Tex.1975).

Under similar circumstances when the sale to the buyer is not a valid sale, courts in other jurisdictions have held that the retail financer holds a priority security interest over that of the inventory financer. *See, e.g., Am. State Bank v. Avco Financial Services,* 71 Cal.App.3d 774, 139 Cal. Rptr. 658, *hearing denied,* 570 P.2d 463, 144 Cal.Rptr. 447 (1977). *See also Rex Financial Corp. v. Great Western Bank & Trust,* 23 Ariz.App. 286, 532 P.2d 558

**144**

(1975); *Chrysler Credit Corporation v. Sharp,* 56 Misc.2d 261, 288 N.Y.S.2d 525 (1968). Points of error one and five are overruled.[4]

In this regard, Borg-Warner contends in its second and third points that since the disposition was not authorized by the Borg-Warner-Lubbock Implement security agreement—providing that "possession of Inventory by Debtor is solely for the purpose of procuring the sale or exchange to a buyer in the ordinary course of Debtor's business,"—its security interest continued in the tractors under section 9.306(b). Section 9.306(b) states that except where otherwise provided, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party. However, section 9.308 provides otherwise; as comment 3 to section 9.306 points out section 9.308 applys "when purchasers of [chattel paper] take free of a security interest even though perfected and even though the disposition was not authorized."

Therefore, the issue of whether Deld Farms was a buyer in the ordinary course of business within the meaning of the Borg-Warner-Lubbock Implement security agreement is immaterial to our determination that C.I.T.'s security interest is superior to Borg-Warner's under section 9.308(2) by operation of section 9.306(e)(2). Since a motion for summary judgment is not defeated by the existence of an immaterial fact issue, *Mecom v. Thompson,* 239 S.W.2d 847, 850 (Tex.Civ.App.—Galveston 1951, writ ref'd n.r.e.); *Ware v. Wright,* 252 S.W.2d 1003, 1005 (Tex.Civ.App.—Dallas 1952, no writ), the second and third points are overruled.

Because C.I.T. conclusively established all of the elements of one of its theories of recovery as a matter of law, it is entitled to summary judgment. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979); *Matthews*

*v. Houtchens, supra;* 4 R. McDonald, *supra.* Therefore, we do not reach Borg-Warner's fourth point that there is a fact question regarding C.I.T.'s separate theory of recovery that C.I.T. was a purchase money security interest holder under section 9.307. Consequently, the fourth point is overruled.

The judgment of the trial court is affirmed.

**4.** Because C.I.T. has prevailed on a theory, separate and unrelated to its first counterpoint contention that it was a buyer in the ordinary course of business under section 9.307(a), we do not address the contention.