**BORG–WARNER ACCEPTANCE CORPORATION, Appellant,**

v.

**MASSEY–FERGUSON, INC., et al., Appellees.**

No. 05–84–01281–CV.

Court of Appeals of Texas, Dallas.

September 30, 1985.

Opinion on Rehearing Feb. 21, 1986.

Last Rehearing Denied July 8, 1986.

Robert M. Warner, Janice E. Cohen, Zimring & Warner (On Motion for Rehearing) Dallas, for appellant.

Roger A. Hansen, Elliott, Churchill, Hansen, Maxfield & Gibbs, Dallas, for appellees.

Before GUITTARD, C.J., and SPARLING and HUGHES [1], JJ.

HUGHES, Justice.

Appellant, Borg-Warner Acceptance Corporation, the retail financier, appeals from a summary judgment rendered in favor of appellee, Massey-Ferguson, Inc., the inventory financier. Both parties moved for summary judgment. The trial court granted Massey-Ferguson's motion and found that Massey-Ferguson held superior security interests in eight pieces of farm equipment.

We reverse and render as to items two through eight and affirm the judgment of the trial court in regard to item one.

Massey-Ferguson manufactures and sells farm equipment. On March 30, 1976, it established Milam Tractor Company, Inc. (Milam) as a retail dealer of its products. Dale Smith was the president of Milam. Under the terms of the dealership agreement, Massey-Ferguson financed the inventory and retained a security interest in each item Milam sold or financed.

This dispute concerns eight pieces of farm machinery and the circumstances of the sale of each item. On May 7, 1980, Milam entered into a retail installment contract with itself—Milam—for the sale of item one. Borg-Warner financed the sale and paid the purchase price in exchange for an assignment of the retail installment contract by Milam.

Two other similar sales, involving items two through eight, occurred later between Milam and Smith, in his individual capacity. On July 25, 1980, Smith purchased items two and three. He purchased items four through eight on November 24, 1980. Both of these retail installment contracts were assigned to Borg-Warner.

Both Milam and Smith defaulted under the terms of their retail installment contracts by failing to make payments to Borg-Warner. As a result, Massey-Ferguson disposed of the machinery by foreclosure upon termination of its sale agreement with Milam. It is uncontested that all the machinery in question remained on Milam's lot until the foreclosure.

At trial, both parties moved for summary judgment. The trial court granted Massey-Ferguson's motion on the grounds that it held the superior lien and denied Borg-Warner's motion.

Borg-Warner raises one point of error on appeal contending that summary judgment should have been rendered for it because it retained the superior security interest as a matter of law. Massey-Ferguson argues that, since the machines remained in Milam's inventory and were not delivered to Smith, its inventory lien was not displaced because there was no passage of title and, therefore, no sale.

In a summary judgment case, the issue on appeal is whether the movant met his burden for summary judgment by establishing that there exists no genuine issue of material fact and that he is entitled to judgment as a matter of law. TEX.R. CIV.P. 166–A; *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant, and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. *Great American Reserve Insurance Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence in the light most

---

1. The Honorable W.A. Hughes, Justice, Second Court of Appeals, Fort Worth, retired, sitting by assignment.

favorable to the non-movant. *Id.* In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the non-movant will be accepted as true. *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984); *Farley v. Prudential Insurance Co.,* 480 S.W.2d 176, 178 (Tex.1972). Every reasonable inference from the evidence must be indulged in favor of the non-movant and any doubts resolved in his favor. *Montgomery,* 669 S.W.2d at 311. Evidence which favors the movant's position will not be considered unless it is uncontroverted. *Great American Reserve Insurance Co.,* 391 S.W.2d at 47. If such uncontroverted evidence is from an interested witness, it does nothing more than raise a fact issue, unless it is clear, direct, positive and free from inconsistencies and contradictions. *Id.* The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of his cause of action or defense as a matter of law. *City of Houston,* 589 S.W.2d at 678.

■ TEX.BUS. & COM.CODE ANN. sec. 9.306 (Vernon Supp.1985) defines "proceeds" and sets forth the rights of the secured party to the proceeds received by the debtor upon disposition of the collateral:

> (b) Except where this chapter otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

Massey-Ferguson argues that Milam's dealings with itself and Smith were not sales because the lack of delivery and the retention of the machinery as inventory on Milam's lot precluded the passage of title; therefore, appellee's security interest was never extinguished.

Borg-Warner claims that, although the transactions between Milam and Smith were not conducted as "regular" sales, a sale did take place under the terms of the Code. We agree with Borg-Warner's argument as concerns transactions involving items two through eight.

TEX.BUS. & COM.CODE ANN. sec. 2.106(a) (Vernon Supp.1985) provides that a sale occurs when title is passed from the seller to the buyer for a price. *See also* TEX.BUS. & COM.CODE ANN. sec. 9.105(c) (Vernon Supp.1985). The applicable test for determining the passage of title is set forth in TEX.BUS. & COM.CODE ANN. sec. 2.401(c)(2), which states that, if goods are already identified at the time of contracting and no documents are to be delivered, title passes at the time and place of contracting unless otherwise explicitly agreed where delivery is to be made without moving the goods. Identification occurs when the contracts are made if it is for the sale of goods already existing and identified. TEX.BUS. & COM.CODE ANN. sec. 2.501(a)(1) (Vernon Supp.1985).

Massey-Ferguson relies on *Weisbart & Co. v. First National Bank,* 568 F.2d 391 (5th Cir.1978), in support of its contention that lack of delivery prevents the existence of a sale, exchange or other disposition under section 9.306(b) so as to prevent any discharge of a prior lien. We believe *Weisbart* is distinguishable on the facts.

In *Weisbart,* a contract for the sale of cattle which were subject to a security interest did not state when title was to pass, but provided for delivery at the buyer's ranch. *Id.* The delivery was not made and the court held that, since there was no delivery effected under the terms of the contract, there was not a "sale" so as to trigger section 9.306(b), which provides that a security interest continues in collateral notwithstanding a sale, exchange, or other disposition of the collateral unless the disposition was authorized by the secured party. *Id.* The court expressly stated that section 2.401(b) controlled as to when title passed and since the contract called for delivery at the buyer's ranch if it so desired, title could not pass until this delivery took place. *Id.*

The record shows that the farm machinery existed at the time of contracting and had been identified by the parties. Each of the retail installment contracts specifically identifies the farm machinery by make, model, description, and serial number. Further, no documents of title were required to be delivered. There is no dispute that the contracts were executed.

The contracts did not specify when title to the farm machinery was to pass. Unlike *Weisbart*, there was no language in the contract providing for delivery to the buyer if desired. We find that to be an important distinction and determinative of which portion of section 2.401 is applicable in the present situation. Since the contract contained no delivery term, that section 2.401(c)(2) is applicable in determining when title passed. *See also International Harvester Credit Corp. v. Associates Financial Services Co.*, 133 Ga.App. 488, 211 S.E.2d 430, 433 (1974). The *Weisbart* court relied on 2.401(b); therefore, the decision in that case is not applicable here.

A situation very similar to our case was presented in *Borg-Warner Acceptance Corp. v. C.I.T. Corp.*, 679 S.W.2d 140 (Tex. App.—Amarillo 1984, writ ref'd n.r.e.), where to finance its inventory the dealer entered into an arrangement similar to that used by appellee. The dealer executed a conditional sales contract-security agreement to sell two tractors to Deld Farms, Inc., which was owned by the same people who owned the dealership. *Id.* The dealer then assigned the contracts to C.I.T. Except for one tractor which was hauled to a farm for one day, the tractors remained on display at the dealer's lot until repossessed by the inventory financier. The dealer carried the tractors as inventory on its books at all times and warranty cards were never issued. *Id.*

Despite the inventory financier's contention that a sale never occurred because there was no effective delivery and the goods were retained as inventory, the court found that C.I.T., the retail financier, held the superior lien. *Id.* The court went on to say:

When Deld Farms took possession of the tractors after the execution of the conditional sales contract-security agreement, this transaction was, when viewed in the light most favorable to Borg-Warner, at the least a disposition within the meaning of section 9.306. It follows that the conditional sales contract-security agreement assigned to C.I.T. was proceeds of inventory within the meaning of sections 9.308(2) and 9.306(a).

*Id.*

We find the reasoning in *Borg-Warner* persuasive despite the factual distinction that in this case none of the farm equipment was ever removed from Milam's lot. We do not believe this slight difference in the facts is sufficient to subordinate the retail financier's security interest. We also find that, pursuant to the dealership agreement, Massey-Ferguson authorized dealings such as these transactions which occurred in the ordinary course of business. The sales of items two through eight were thus valid and triggered the operation of section 9.306(b) so as to extinguish Massey-Ferguson's prior security interest in the farm machinery.

As to item one, we hold that Massey-Ferguson retained the superior lien in that piece of machinery. It is settled in Texas that an owner cannot have a lien on his own property since ownership and the lien are inconsistent interests. *See Robinson v. Cleveland State Bank*, 282 S.W. 860, 866 (Tex.Civ.App.—Beaumont 1926, writ dism'd w.o.j.). Therefore, since item one was purportedly sold by Milam to Milam, appellee's security interest in that equipment has priority. We accordingly affirm the trial court's judgment as to item one. However, with respect to items two through eight, we hold that because Borg-Warner has conclusively proven all essential elements of its cause of action as a matter of law, Borg-Warner holds the superior lien and is therefore entitled to summary judgment as to these items.

We reverse and render as to items two through eight and affirm the judgment of the trial court in regarding item one.

Before GUITTARD, C.J., and SPAR-LING [1] and HUGHES [2], JJ.

GUITTARD, Chief Justice.

## ON MOTION FOR REHEARING

In its motion for rehearing, Massey-Ferguson makes several contentions that merit further discussion: (1) that no sale was made to Smith because of the absence of an explicit agreement that title should pass without moving the goods; (2) that Massey-Ferguson's security interest was prior because Borg-Warner failed to plead and prove that Milam's sale to Smith was authorized by Massey-Ferguson within section 9.306(b) of the Texas Business and Commerce Code [3] or that the sale was made in the ordinary course of business within section 9.307, and (3) that Massey-Ferguson's security interest was prior because it was first in time and Borg-Warner failed to perfect its security interest by filing a financing statement. We conclude that none of these contentions are well taken; accordingly, we overrule the motion for rehearing.

### *Passage of Title*

The passage-of-title question turns on interpretation of section 2.401 (Vernon 1968). Massey-Ferguson contends that we erred in holding that title to the goods passed from Milam to Smith under section 2.401(c) without actual delivery because there is no evidence of an explicit agreement that delivery should be made without moving the goods. It argues that in the absence of such an agreement, the transaction is governed by section 2.401(b), which provides that unless otherwise explicitly agreed, title passes "when the seller completes his performance with reference to the physical delivery of the goods," and that, because there is no evidence of delivery or of any explicit agreement that title should pass

without moving the goods, no sale was made to Smith that would support the security agreement assigned to Borg-Warner.

We conclude that we correctly applied section 2.401 in our original opinion. We read subsection (c) as applying to any sale where delivery is to be made without moving the goods "[u]nless otherwise explicitly agreed," that is, unless the parties explicitly agree that delivery is to be made at a different time or place. On the other hand, when there is an explicit agreement for delivery at a different time or place, then subsection (b) applies and no title passes until "the seller completes his performance with reference to physical delivery of the goods."

In the present case, since the parties made no agreement for delivery at a different time or place, and the goods were identified, title passed without physical delivery when the sales agreements were signed. Consequently, the security interest assigned to Borg-Warner attached, and the question for our decision is priority between Borg-Warner's security interest and the previously perfected security interest of Massey-Ferguson, the inventory lender.

### *Sales in Ordinary Course of Business*

■ Massey-Ferguson further contends that we erred in holding that it authorized sales of goods within Milam's inventory and that, therefore, its security interest was extinguished under section 9.306(b). Massey-Ferguson argues that in order for Borg-Warner to defeat Massey-Ferguson's motion for summary judgment and prevail on Borg-Warner's own motion, Borg-Warner had the burden of pleading and proving by conclusive summary-judgment evidence either (1) that the purported sale from Milam to Smith was made "in the ordinary course of business upon customary terms for value received," as required by Massey-Ferguson's security agreement, and thus

**1.** The Honorable Jon Sparling, Justice, resigned December 31, 1985.

**2.** The Honorable W.A. Hughes, Justice, Second Court of Appeals, Fort Worth, retired, sitting by assignment.

**3.** All references to sections are to the Texas Business and Commerce Code Annotated (Tex. UCC) (Vernon Supp.1986), unless otherwise noted.

"authorized" under subsection 9.306(b), or (2) that the sale was made to "a buyer in the ordinary course of business" within section 9.307(a). Massey-Ferguson insists that there was no such pleading and proof, but that, on the contrary, the evidence showed that the sales from Milam to Smith, its principal officer and stockholder, were a sham "double financing" of Milam's inventory, since Smith's affidavit reveals that he never took possession and the goods remained in Milam's inventory.

We conclude that this issue is immaterial. We hold that even if Massey-Ferguson's security interest continued because the purported sales were not made in the ordinary course of Milam's business, and thus did not comply with either Massey-Ferguson's security agreement or section 9.307(a), Borg-Warner has a security interest superior to that of Massey-Ferguson under section 9.306(e)(2). Subsection (e) provides:

If a sale of goods results in an account or chattel paper which is transferred by the seller to a secured party, and if the goods are returned to or are repossessed by the seller or the secured party, the following rules determine priorities:

(1) If the goods were collateral at the time of sale for an indebtedness of the seller which is still unpaid, the original security interest attaches again to the goods and continues as a perfected security interest if it was perfected at the time when the goods were sold.

\* \* \* \* \* \*

(2) An unpaid transferee of the chattel paper has a security interest in the goods against the transferor. *Such security interest is prior to a security interest asserted under Subdivision (1) to the extent that the transferee of the chattel paper was entitled to priority under Section 9.308.* [Emphasis added].

Section 9.308 provides:

A purchaser of chattel paper or an instrument who gives new value and takes possession of it in the ordinary course of his business has priority over a security

interest in the chattel paper or instrument

\* \* \* \* \* \*

(2) which is claimed merely as proceeds of inventory subject to a security interest (Section 9.306) even though he knows that the specific paper or instrument is subject to the security interest.

In the present case, it is undisputed that Borg-Warner, in the ordinary course of its business, gave value and took possession of the chattel paper arising from the sales from Milam to Smith. Consequently, section 9.308 entitles Borg-Warner, as purchaser of the chattel paper, to priority over any claim by Massey-Ferguson to the paper as proceeds. Although Massey-Ferguson does not claim a security interest in the chattel paper, section 9.306(e)(2) gives the unpaid transferee of chattel paper the same priority with respect to goods repossessed by the inventory lender. Consequently, Borg-Warner, as a purchaser of the chattel paper for value in the ordinary course of its business, has priority over Massey-Ferguson's perfected security interest in the inventory.

This interpretation of sections 9.306(e)(2) and 9.308 is supported by *Borg-Warner Acceptance Corp. v. C.I.T. Corp.*, 679 S.W.2d 140, 142–43 (Tex.App.—Amarillo 1984, no writ). That case involved the question of priority between an inventory lender and a retail lender with respect to two tractors purportedly sold by a dealer to Deld Farms, an affiliated corporation. There was evidence that the down payment recited was not paid and that Deld Farms took possession of the tractors, but soon returned them to the dealer's lot where they remained in the dealer's inventory. The court of appeals affirmed a summary judgment for the retail lender on the ground that section 9.306(e), when read together with section 9.308(2), gave the retail lender priority in the goods as well as in the chattel paper resulting from sale of the goods. Because of this priority, the court regarded as immaterial the question whether the sale to Deld Farms was in the ordinary course of the dealer's business.

It is arguable that sections 9.306(c) and 9.308(2) do not apply in the absence of a genuine sale of the goods, since section 9.306(e), by its terms, applies "[i]f a *sale* of goods results in ... chattel paper which is transferred by the seller to a secured party." In *Borg-Warner*, the court considered the sham-sale question, but held that the retail lender's security interest attached by the terms of section 9.203, which provides that a security interest attaches when (1) the debtor has signed the security agreement, (2) value is given, and (3) the debtor has rights in the collateral. The evidence showed that Deld Farms signed the conditional sale-security agreement and that value was given to the dealer, although it was questionable whether the down payment had been made. The court held that evidence of possession of the tractors by Deld Farms, together with the duly executed security agreement, established an interest in Deld Farms sufficient to permit the attachment and enforcement of the dealer's security interest under section 9.203. Thus the court found it unnecessary to determine whether the sale was authorized by the inventory lender or was made in the regular course of business. 679 S.W.2d at 143–44.

■ In the present case, the question remains whether Smith's failure to take possession of the goods shows that he never acquired any rights in the collateral, and, therefore, that Borg-Warner's claimed security interest never attached. We conclude that so far as Borg-Warner's claimed security interest is concerned, the conditional sale-security agreements signed by Milam and Smith and transferred by Milam to Borg-Warner are sufficient in themselves to establish "sales" of the goods within section 9.306(e), although these sales may not have been made in the ordinary course of Milam's business.

This question is essentially the same as the passage-of-title question previously discussed. As we have already held, because the goods were identified and the contracts contained no explicit agreement for delivery at a different time or place, title passed when the conditional sales contracts were signed. We conclude that Borg-Warner was entitled to rely on the conditional sales-security agreements assigned to it in the ordinary course of its business as establishing the passage of title to Smith, the attachment of Milam's security interest, and the priority of that security interest over the security interest of Massey-Ferguson. Under the circumstances shown, Borg-Warner was not required to investigate and determine whether Smith had actually taken possession of the goods.

In reaching this conclusion, we are guided by the policy underlying sections 9.306 and 9.308. Modern commercial practices make it impracticable for a retail lender purchasing chattel paper in the ordinary course of its business to inquire into the factual circumstances surrounding the transactions on which the paper is based. The inventory lender, because of its continuing relationship with the dealer, is in a better position to protect itself against its borrower's double dealing. Moreover, the inventory lender necessarily contemplates that its collateral will be sold and its security interest will then attach to the proceeds and to other goods. Consequently, as between the two innocent lenders, the loss should fall on the inventory lender. This policy is explained and applied to an admitted sham sale in the well-reasoned opinion in *American State Bank v. Avco Financial Services,* 71 Cal.App.3d 774, 782–87, 71 Cal.Rptr. 658, 663–66 (1977).

### Perfection of Security Interest

Massey-Ferguson claims a prior security interest under section 9.312 because it perfected its security interest by filing a financing statement before Borg-Warner, and because Borg-Warner did not perfect its security interest with respect to some of the items in question. This contention, also, is without merit. Section 9.312, which states general rules of priority, expressly provides in subsection (a) that these rules are subject to the rules of priority stated in other sections of the same subchapter, which includes sections 9.306 and 9.308.

Since we have concluded that Borg-Warner has special priority under those sections, we hold that Massey-Ferguson's earlier filing is immaterial. Section 9.312(a) and comment 1 (Vernon Supp.1986), section 9.312(a) and comment 1 (Vernon 1968). This holding is implicit in *Borg-Warner*, where the perfected security interest of the retail lender was held prior to the earlier-perfected security interest of the inventory lender. 679 S.W.2d at 141–42. In other situations special priorities have been recognized as superior to earlier-perfected security interests. *Ford Motor Credit Co. v. First State Bank*, 679 S.W.2d 486, 487 (Tex.1984) (first-to-file priority applied as against holder of purchase-money security interest in absence of notice required by section 9.312(c)(2)); *Gulf Coast State Bank v. Nelms*, 525 S.W.2d 866, 870 (Tex.1975) (mechanic's lien was prior to earlier-perfected security interest).

The motion for rehearing is overruled.