623 So.2d 580 (1993)
BLAZER FINANCIAL SERVICES, INC., a Florida corporation, Appellant/Cross-Appellee,
v.
HARBOR FEDERAL SAVINGS AND LOAN ASSOCIATION, a Florida corporation, Appellee/Cross-Appellant.
No. 92-0595.
District Court of Appeal of Florida, Fourth District.
August 25, 1993.
*581 Raymond M. Masciarella II, North Palm Beach, for appellant/cross appellee.
Jose I. Astigarraga, Diane R. Noller and Adalberto Jordan of Steel Hector & Davis, Miami and West Palm Beach, for appellee/cross-appellant.
DELL, Chief Judge.
Blazer Financial Services, Inc., ("Blazer") appeals a final judgment awarding Appellee Harbor Federal Savings and Loan Association ("Harbor Federal") damages, prejudgment interest and costs in connection with Harbor Federal's action for conversion of collateral in which it held a security interest. Harbor Federal cross-appeals the trial court's determination of its damages. We reverse the trial court's judgment against Blazer.
This appeal arises out of a series of commercial transactions. In 1989, Dubose Jewelry Company, Inc., ("Dubose Jewelry") granted Harbor Federal a continuing security interest in the jeweler's existing or acquired collateral, including its accounts and chattel paper, at three of its retail locations. Under the agreement, the jeweler warranted it would not sell or remove its collateral except for the sale of its inventory in the ordinary course of business. As part of the financing arrangement, Harbor Federal recorded a U.C.C. Form 1 Financing Statement in the public records of Indian River, Brevard and St. Lucie Counties and filed this statement with the Florida Secretary of State.
On March 1, 1990, Dubose Jewelry executed a Bulk Purchase/Sales Agreement with Blazer wherein Blazer agreed to purchase from Dubose Jewelry a "series of retail installment sales contracts and security agreements and accounts receivable," collectively referred to as "Sales Contracts". Some 526 of the 1,100 Sales Contracts purchased by Blazer were accounts subject to Harbor Federal's security interest. These accounts had a face value of $107,567.53. Of these 526 accounts, 272 were evidenced by chattel paper and had a balance of $60,239.75. Blazer did not take possession of 29 accounts of chattel paper having a balance of $5,615.15. The remaining 222 of the 526 accounts had a balance of $41,712.63.[1] Blazer purchased these 526 accounts at a discounted price of $64,876.51.
In June of 1990, Dubose Jewelry filed for bankruptcy. Subsequently, Harbor Federal filed this lawsuit alleging Blazer converted its collateral and proceeds therefrom. Blazer claimed it had priority over Harbor Federal's security interest under section 679.308, Florida Statutes (1991).[2] The trial court determined Blazer had a priority interest in the chattel paper but limited the statutory protection to the amount of new value paid. Consequently, the trial court awarded Harbor Federal damages in the amount of $42,691.02 (the difference between what Blazer paid for the chattel paper and its face value), plus prejudgment interest and costs.
Blazer contends the trial court erred in holding it liable for the difference between *582 what it paid Dubose Jewelry and the face value of the chattel paper. Blazer argues it is entitled to take the chattel paper free and clear of Harbor Federal's prior security interest given the trial court's finding that Blazer purchased the chattel paper as provided by section 679.308. We agree.
On cross-appeal, Harbor Federal contends the trial court erred when it extended the protection of section 679.308 to Blazer because Blazer failed to prove the transaction occurred in its ordinary course of business. We disagree. Subject to its argument on cross-appeal, Harbor Federal concedes the trial court correctly interpreted section 679.308 to provide Blazer with priority protection against its security interest to the extent of the new value paid.
We first address Harbor Federal's cross-appeal. Harbor Federal contends the trial court erred when it extended the protection of section 679.308 to Blazer. Section 679.308 provides:
A purchaser of chattel paper or an instrument who gives new value and takes possession of it in the ordinary course of his business has priority over a security interest in the chattel paper or instrument....
Harbor Federal argues Blazer failed to prove it purchased the chattel paper in the ordinary course of its business because its bulk purchase of the chattels varied from its other acquisitions of receivables. However, in its brief, Harbor Federal agreed that "Blazer buys receivables from retailers like Dubose Jewelry on a daily basis ..." and purchased receivables in bulk on other occasions, including some six to eight bulk purchases during a four-year period. We are satisfied the record contains sufficient evidence to support the trial court's finding that Blazer acquired the chattel paper in the ordinary course of its business. The trial court, therefore, did not err when it extended the protection of section 679.308 to Blazer.
The question remains, however, whether the trial court erred when it limited the protection of section 679.308 to the amount paid by Blazer for the chattel paper. Harbor Federal contends that if we limit the protection granted to Blazer to the extent of the new value paid, both lenders would bear only a partial loss. Harbor Federal suggests that by so limiting the protection of section 679.308, the retail lender (i.e., Blazer) would bear only the loss of its anticipated profits and the inventory lender (i.e., Harbor Federal) would bear only the loss of the amount of the new value paid to the borrower (i.e., Dubose Jewelry). This rationale, however, assumes Blazer will receive full payment from each of the chattel paper debtors. In our view, the effect of the judgment against Blazer  holding it liable for the difference between the value it paid for the chattel paper and its face value  makes Blazer a partial guarantor of the underlying debtor's obligation.
Harbor Federal cites Wickes Corp. v. General Electric Credit Corp., 363 So.2d 56 (Fla. 3d DCA 1978), to support its position that the priority of a buyer of chattel paper is limited to the value it paid. However, our review of Wickes leads us to conclude otherwise.
In Wickes, a recreational vehicle dealer financed the acquisition of its inventory with funds provided by Wickes, an inventory lender, which obtained a security interest in the dealer's inventory, proceeds therefrom and chattel paper. The dealer sold motor homes to several customers under installment purchase security agreements and then sold these security agreements to a retail lender. These customers returned the motor homes to the dealer to rent on their behalf. When the dealer defaulted under its inventory financing agreement, the inventory lender repossessed the dealer's inventory including the motor homes previously sold to these customers. In the ensuing lawsuit, the retail lender cross-claimed against the inventory lender seeking damages for conversion of its collateral. The Third District affirmed the lower court's decision finding the retail lender was entitled to recover the consideration it paid for the installment purchase security agreements under section 679.308.
In our view, Wickes does not support Harbor Federal's position. In Wickes, the inventory lender was liable to the retail lender because it repossessed the underlying inventory. The purchase price paid by the retail *583 lender for the chattel paper correctly measured its damages because Wickes converted the retail lender's interest in the recreational vehicles upon which the sale of the chattel paper was based. Here, however, Blazer has not converted Harbor Federal's collateral because it was entitled to the statutory protection of section 679.308 when it purchased the chattel paper for value with no specific knowledge of Harbor Federal's security interest.
In Borg-Warner Acceptance Corp. v. Massey-Ferguson, Inc., 713 S.W.2d 351 (Tex. Ct. App. 1985), a farm equipment manufacturer sold machinery to its subsidiary retail division on credit and retained a security interest in the equipment sold. The retail division sold several pieces of equipment to a customer under the terms of a retail installment sales agreement. Borg-Warner financed the sale by paying the purchase price to the retailer in exchange for an assignment of the customer's contract. On rehearing, the Texas Court of Appeal reversed a summary judgment in which the trial court found the manufacturer held a superior interest. The Court of Appeal held Borg-Warner, as purchaser of the chattel paper, had priority over any claim of the manufacturer to the chattel paper as proceeds of the inventory. The court noted the policy underlying section 9-308 of the Uniform Commercial Code:
Modern commercial practices make it impracticable for a retail lender purchasing chattel paper in the ordinary course of its business to inquire into the factual circumstances surrounding the transactions on which the paper is based. The inventory lender, because of its continuing relationship with the dealer, is in a better position to protect itself against its borrower's double dealing. Moreover, the inventory lender necessarily contemplates that its collateral will be sold and its security interest will then attach to the proceeds and to other goods. Consequently, as between the two innocent lenders, the loss should fall on the inventory lender.
Id. at 357.
We agree with the Borg-Warner court's practical application of section 9-308. We also find the court's opinion consistent with Comment 2 of the Code's Official Comments to section 9-308 which states:
Although perfection by filing is permitted as to chattel paper, certain purchasers of chattel paper allowed to remain in the debtor's possession take free of the security interest despite the filing.
Clause (b) of the section deals with the case where the security interest in the chattel paper is claimed merely as proceeds  i.e., on behalf of an inventory financier who has not by some new transaction with the debtor acquired a specific interest in the chattel paper.
(Emphasis added).[3] Therefore, we hold one who purchases chattel paper in accord with the statutory requirements of section 679.308 has a priority interest in the chattel paper to the full extent of its face value.
Blazer has stipulated it did not take possession of 29 accounts having a value of $5,615.15. Accordingly, we reverse the final judgment in favor of Harbor Federal and remand this case with directions to enter judgment in favor of Blazer, excluding those 29 accounts of which Blazer did not take possession.
REVERSED and REMANDED.
HERSEY, J., and WALDEN, JAMES H., Senior Judge, concur.
NOTES
[1] At trial Harbor Federal disputed whether 222 accounts purchased by Blazer were evidenced by chattel paper and whether Blazer took possession of these accounts. This issue has not been appealed by Harbor Federal and both parties have referred to the 526 accounts in their briefs as chattel paper.
[2] Section 679.308, Florida Statutes (1991), which mirrors section 9-308 of the Uniform Commercial Code (1972), provides:

A purchaser of chattel paper or an instrument who gives new value and takes possession of it in the ordinary course of his business has priority over a security interest in the chattel paper or instrument:
(1) Which is perfected under s. 679.304 (permissive filing and temporary perfection) or under 679.306 (perfection as to proceeds) if he acts without knowledge that the paper or instrument is subject to a security interest; or
(2) Which is claimed merely as proceeds of inventory subject to a security interest (s. 379.306) even though he knows that the specific paper or instrument is subject to the security interest.
[3] See also Ronald A. Anderson, Uniform Commercial Code § 9-308:5 (1985):

When the inventory creditor consents to the sale of collateral, the security interest is transferred from the collateral to the proceeds of the sale. If the seller sells on credit, the chattel paper created thereby is the proceeds and if the chattel paper is sold to a financer, the latter takes clear of the inventory financer's security interest by virtue of UCC 9-308.
(Emphasis added and footnote omitted).