Trust Company Bank *vs.* The Gloucester
Corporation & others.[1]

Suffolk. October 6, 1994. - November 21, 1994.

Present: Liacos, C.J., Wilkins, Lynch, O'Connor, & Greaney, JJ.

*Uniform Commercial Code*, Security interest, Secured transaction, Transfer of collateral. *Secured Transactions. Sale*, Contract of sale. *Words*, "Rights in the collateral."

Delivery of a quantity of scallops under a sales agreement gave the receiving party a degree of control and authority over the goods, as well as "a special property and an insurable interest" under G. L. c. 106, § 2-501 (1), that amounted to "rights in the collateral" within the meaning of G. L. c. 106, § 9-203 (1) (*c*), so that a valid security interest of a creditor of the receiving party could attach to the goods having priority over the assigned rights of the seller of the scallops. [50-53]

Civil action commenced in the Superior Court Department on February 18, 1992.

The case was heard by *Peter M. Lauriat*, J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Bruce Medoff* for the plaintiff.

*Evan Slavitt* for the defendants.

Greaney, J. The facts in this case are undisputed. On December 19, 1991, Sigma International, Inc. (Sigma), agreed to sell seafood to the Gloucester Corporation (Gloucester). On January 16, 1992, Sigma delivered to Gloucester under the agreement a quantity of scallops worth $143,391. The invoice from Sigma stated that the sale was "pending FDA

[1]Fleet National Bank and Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A.

release," and included a payment term of "net 30 days from FDA release date." The invoice also assigned Sigma's rights in Gloucester's account to the plaintiff, Trust Company Bank. On January 24, 1992, the defendants, Fleet National Bank and Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A., banks which held duly perfected security interests in all of Gloucester's tangible and intangible personal property, including after-acquired property, determined that Gloucester was in default, and seized and liquidated all of Gloucester's inventory, including the scallops.

The plaintiff commenced an action in the Superior Court against Gloucester and the defendants. As far as now relevant, the plaintiff sought to recover damages from the defendants for conversion of the scallops.[2] On that claim, the defendants moved for summary judgment under Mass. R. Civ. P. 56 (b), 365 Mass. 824 (1974), contending that they had enforceable security interests in all of Gloucester's assets pursuant to G. L. c. 106, § 9-203 (1992 ed.).[3] It was undisputed that the defendants had met the requirements of § 9-203 (1) (*a*) and (*b*), and the defendants maintained that they were entitled to judgment, as matter of law, on the requirement contained in § 9-203 (1) (*c*), namely that, under the sales agreement between Gloucester and Sigma, Gloucester had acquired "rights in the collateral." A judge of the Superior Court denied the defendants' motion for summary judgment, and they moved for reconsideration. The plaintiff op-

[2]The plaintiff's complaint also sought damages from Gloucester on claims of breach of contract and quantum meruit. A default judgment has been entered against Gloucester.

[3]General Laws c. 106, § 9-203 (1992 ed.), provides in part as follows:

"(1) Subject to the provisions of [three statutes which are not applicable to this case], a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:

"(*a*) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned;

"(*b*) value has been given; and

"(*c*) the debtor has rights in the collateral."

posed the defendants' motion for reconsideration, and filed its own motion for summary judgment pursuant to Mass. R. Civ. P. 56 (a), 365 Mass. 824 (1974). The judge allowed the defendants' motion for reconsideration, and, after reconsideration, allowed the defendants' motion for summary judgment.[4] The plaintiff has appealed from the judgment in favor of the defendants, and we transferred the case to this court on our own motion. We now affirm the judgment.

The plaintiff argues that the defendants' security interests could not attach to the scallops, and thus were subordinate to its rights as Sigma's assignee, because Gloucester could not acquire "rights in the collateral" under G. L. c. 106, § 9-203 (1) (*c*), before obtaining "FDA release" of the scallops. We disagree.

The term "rights in the collateral" is not defined in the Uniform Commercial Code, and there is no relevant Massachusetts case law discussing the term. Authority from other jurisdictions, however, has defined the term broadly. While a debtor's mere possession of goods usually is not enough to satisfy the "rights in the collateral" requirement of § 9-203 (1) (*c*), "[t]he cases generally hold . . . that where a debtor gains possession of collateral pursuant to an agreement endowing him with *any* interest other than naked possession, the debtor has acquired such rights as would allow [a] security interest to attach" under § 9-203 (emphasis added). *Morton Booth Co.* v. *Tiara Furniture, Inc.*, 564 P.2d 210,

---

[4]The plaintiff contends that, pursuant to Superior Court Rule 9D (1990), entitled "Motions for Reconsideration," the judge should have held a hearing on the defendants' motion for reconsideration. Because there was no hearing, the plaintiff suggests that the judge's grant of summary judgment to the defendants is invalid. This contention is wholly without merit. Rule 9D allows a judge to hold a hearing on a motion for reconsideration, or refer the motion to the Regional Administrative Justice, if he or she "desires." This is an entirely optional procedure. Nothing in this case suggests that the motion judge exercised his discretion improperly. Neither party denies that, at the time of the defendants' seizure, Gloucester had possession of the scallops pursuant to a valid sales contract. The only dispute that exists is whether Gloucester had "rights in the collateral" under G. L. c. 106, § 9-203 (1) (*c*). The judge had already held one hearing and had two written submissions on that same issue.

214 (Okla. 1977). See *Kinetics Technology Int'l Corp.* v. *Fourth Nat'l Bank*, 705 F.2d 396, 399 (10th Cir. 1983); *Litwiller Mach. & Mfg., Inc.* v. *NBD Alpena Bank*, 184 Mich. App. 369, 372 (1990). See also *In re Samuels & Co.*, 526 F.2d 1238, 1249 (5th Cir.), cert. denied sub nom. *Stow-- ers* v. *Mahon*, 429 U.S. 824 (1976); *First Nat'l Bank* v. *Smoker*, 153 Ind. App. 71, 80-81 (1972). Consistent with this standard, it has been held that, a debtor's possession of goods with contingent rights of ownership, gives the debtor "rights in the collateral." See *In re County Green Ltd. Partnership*, 438 F. Supp. 693, 696 (W.D. Va. 1977); *Amfac Mortgage Corp.* v. *Arizona Mall of Tempe, Inc.*, 127 Ariz. 70, 73-74 (Ct. App. 1980); *Evans Prods. Co.* v. *Jorgensen*, 245 Or. 362, 366 (1966); *Borg-Warner Acceptance Corp.* v. *C.I.T. Corp.*, 679 S.W.2d 140, 143 (Tex. Ct. App. 1984). See also 2 J.J. White & R.S. Summers, Uniform Commercial Code § 24-6, at 322-323 (3d ed. 1988) ("What kind of 'rights in the collateral' may the debtor acquire that will suffice under 9-203 . . . . ? If the goods are entirely owned by a third party, mere acquisition of possession by the debtor will not be enough. But there are intermediate cases in which the debtor acquires less than full ownership and courts hold that this is enough for attachment [to the extent of the value of the rights]. It follows that almost any 'rights in the collateral' will suffice under 9-203." [Footnotes omitted] ).[5]

The delivery of the scallops by Sigma to Gloucester pursuant to their sales agreement gave Gloucester "rights in the

---

[5]The plaintiff relies on *In re McFarland*, 131 B.R. 627 (Bankr. E.D. Tenn. 1990), aff'd without opinion, 943 F.2d 52 (6th Cir. 1991), to support its argument that, the defendants' security interests could not attach prior to "FDA release" of the scallops. The *McFarland* case involved the sale of two automobiles that was contingent on the purchasers receiving financing. The court held that the purchasers did not acquire sufficient rights in the collateral, even though they drove off in the automobiles after the parties had signed the contract. *Id.* at 631-632. This case, however, is inapposite because, under the sales contract, the purchasers were not entitled to even possessory rights in the automobiles. *Id.* Rather, they received possession of the collateral only because the dealer, for whatever reason, allowed them to have the automobiles before financing was obtained.

collateral" for purposes of G. L. c. 106, § 9-203 (1) (*c*). Those rights arose under art. 2 of the Uniform Commercial Code governing sales.[6] General Laws c. 106, § 2-501 (1) (1992 ed.), recognizes that, from the moment goods are identified to a contract of sale, the buyer has "a special property and an insurable interest." Here, the scallops had been delivered pursuant to an agreement of sale that made sale and payment subject to inspection by a government agency. That condition, if not satisfied, might have relieved Gloucester of its obligation to pay, but the condition did not negate the existence of an actual sales agreement between Gloucester and Sigma.[7] Gloucester had acquired a degree of control and authority over the scallops as well as "a special property and an insurable interest" in them under § 2-501 (1). These incidents were sufficient to allow the defendants' security interests to attach to the scallops and to make the plaintiff's rights subordinate to the defendants' liens in the absence of the plaintiff having a perfected purchase money security interest. See G. L. c. 106, §§ 9-107, 9-303, 9-312 (3) (1992 ed.). We view this result as comporting with the goal of art. 9, to promote efficiency and certainty in secured financing transactions. See Official Comment to § 9-101, 3 U.L.A. 60-61 (Master ed. 1992). Otherwise, if a buyer, like Gloucester is determined to lack "rights in the collateral," a creditor's valid security interest covering the goods constituting the collateral could be "defeated by the sort of hidden-title subter-

---

[6]When the security interest relates to a sale of goods, art. 2 determines whether a debtor has rights. See 8 Anderson, Uniform Commercial Code § 9-203:44, at 688 (3d ed. 1985); *Manger* v. *Davis,* 619 P.2d 687, 690 (Utah 1980); *Johnson* v. *Conrail-Amtrak Fed. Credit Union,* 37 U.C.C. Rep. Servs. (Callaghan) 933, 942 (D.C. Super. Ct. 1983).

[7]The role of title is not significant to the analysis. The Uniform Commercial Code emphasizes that the concept of "title" is immaterial to whether a security interest attaches. See the Official Comment to § 9-101, 3 U.L.A. 60-61 (Master ed. 1992). In addition, G. L. c. 106, § 2-401 (1) (1992 ed.), provides that "[a]ny retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest."

fuge the Code was intended to prevent." *Kinetics Technology Int'l Corp.* v. *Fourth Nat'l Bank, supra* at 399.

*Judgment affirmed.*